# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

VIASYSTEMS TECHNOLOGIES
CORP., LLC, as assignee
VIASYSTEMS-MILWAUKEE, INC.,

      Plaintiff,

      v.                                  Case No. 10-C-577

LANDSTAR RANGER, INC.,
J.T.&T, INC. d/b/a INDUSTRIAL
CONSTRUCTION & ASSOCIATES,
and ABC GLOBAL LLC,

      Defendants

---

## DECISION & ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

## I. PROCEDURAL BACKGROUND

The plaintiff, Viasystems Technologies Corp. ("Viasystems"), commenced this action by filing a complaint in the Milwaukee County Circuit Court asserting five counts against defendants, Landstar Ranger, Inc., J. T. & T., Inc. d/b/a Industrial Construction Associates ("ICA"), and ABC Global LLC. Relevant to this motion is Count III, which alleges that ICA breached its contract with Viasystems by failing to deliver a Finnpower punch press (the "Press") in good working condition. Counts I and II arise under the laws of the United States and therefore state a federal question. *See* 28 U.S.C. § 1331. Consequently, on July 12, 2010, ABC Global removed the case to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1441(b). The district court has supplemental

jurisdiction over those counts brought under state law, including plaintiff's breach of contract claim. *See* 28 U.S.C. § 1367. Upon the parties' consent to the exercise of jurisdiction by a magistrate judge, on August 17, 2010, the case was transferred to this court for all further proceedings.

On April 6, 2011, the plaintiff filed a motion for partial summary judgment against ICA seeking entry of judgment in favor of its breach of contract claim against ICA. The plaintiff asserts that the undisputed facts establish a prima facie case of breach of contract: (1) a contract between the plaintiff and ICA, (2) breach of the enumerated duties by ICA, and (3) damages.

On May 5, 2010, ICA filed a brief in opposition to the plaintiff's motion. ICA argues that the plaintiff's motion must be denied on two grounds. First, ICA argues that the court must determine whether ICA is a motor carrier or freight forwarder under the Carmack Amendment, 49 U.S.C. § 14706, before it can rule on the plaintiff's state law breach of contract claim, and that the court does not have enough information to do so at this time. Second, ICA argues that a dispute of material fact regarding the existence of a contract obligating ICA to transport the Press precludes summary judgment.

In accordance with Civil L.R. 56(2) (E.D. Wis.), which governs summary judgment procedures, the parties submitted proposed findings of fact and responses thereto. In support of ICA's proposed findings and responses to the plaintiff's proposed findings, ICA attached an affidavit sworn and signed by Joseph Van Bree, ICA's Chief Executive Officer.

On June 6, 2010, the plaintiff filed its reply brief, in which it attacks both defenses set forth by ICA. With regard to ICA's preemption defense, the plaintiff argues that ICA has failed to present facts establishing that it is a motor carrier or freight forwarder under the Carmack Amendment. Because ICA's preemption defense is based on pure speculation and contradicts ICA's own pleadings, the plaintiff argues that it cannot defeat summary judgment. With regard to ICA's material fact defense, the plaintiff

2

argues that ICA's present assertion–that it did not contract to transport the press–is contradicted by prior, binding discovery answers.

Along with its reply, the plaintiff filed a motion to strike Mr. Van Bree's affidavit. The plaintiff's supporting argument is threefold. To summarize, the plaintiff argues that the affidavit cannot be utilized by the court in ruling on the plaintiff's summary judgment motion because (1) it is not made upon personal knowledge, (2) it contradicts previous discovery answers, and (3) it is unsupported by proper documentary evidence.

ICA's motion, proposed findings of fact, and responses to the plaintiff's proposed findings of fact rely heavily on Van Bree's affidavit, and without it, ICA's responses would be rendered insufficient under the Local Rules. *See* Civil L.R. 56(b)(2); *see also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994) ("we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). Therefore, before introducing the facts underlying the alleged breach of contract, the court will address the plaintiff's motion to strike.

## II. MOTION TO STRIKE VAN BREE AFFIDAVIT

Civil L.R. 56(2)(a) requires motions for summary judgment to be accompanied by a set of proposed findings of material fact "as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." Each proposed finding must include specific references to supporting material relied upon to support the proposed facts. Civil L.R. 56(2)(b) requires the opposing party to respond to each of the movant's proposed findings and provide a set of supplemental proposed findings of fact requiring the denial of summary judgment. Similarly, each response and proposed finding must include specific references to supporting material relied upon to

support the nonmovant's response or proposed fact.

In accordance with the rules, the plaintiff's motion for partial summary judgment was accompanied by a set of proposed findings of fact. ICA filed a response to the plaintiff's proposed findings along with its own additional findings of fact. In support of its responses and own proposed findings, ICA referred to supporting materials it relied upon to support each response and proposed finding, as required.

Relevant to the present motion are references to the supporting affidavit of Joseph Van Bree. The plaintiff asks the court to strike Van Bree's affidavit because the affidavit: (1) is not made upon personal knowledge as required by Fed. R. Civ. P. 56(c) and (2) contradicts prior sworn statements thus violating the sworn affidavit rule. In addition, the plaintiff argues that ICA failed to provide documentary evidence supporting its claim that it did not enter a contract to transport the Press to the plaintiff's El Paso facility.

*a. Personal Knowledge*

The plaintiff's first attack against Van Bree's affidavit is premised on Fed. R. Civ. P. 56(c)(4)'s personal knowledge requirement. Specifically, the plaintiff argues that Van Bree's affidavit "fails to set forth that he has personal knowledge to all matters set forth in the affidavit. . . . ." (Pl's Mot. Strike 2.) The plaintiff's argument ends there, leaving the court to determine which portions of the affidavit the plaintiff believes were not made upon personal knowledge.[1]

When offered to oppose a motion for summary judgment, an affidavit must be made on personal knowledge.[2] Fed. R. Civ. P. 56(c)(4). *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th

---

[1] It appears that the plaintiffs object to all portions of the affidavit "attest[ing] that ICA did not enter into a contract to both rig and transport the press . . . [and] contend[ing] that ICA had no knowledge and/or role regarding the destination of the press," but do not cite to any specific statements. (Pl's Mot. Strike Br. 3.)

[2] Rule 56 was amended, effective December 1, 2010. The personal knowledge requirement was previously found in subsection (e).

Cir.1989). This requirement "parallels Fed. R. Evid. 602, which forbids a witness from testifying to matters of which he does not have personal knowledge." *Id.* The Seventh Circuit has clarified the personal knowledge requirement explaining:

> "[P]ersonal knowledge" includes inferences—all knowledge is inferential—and therefore opinions. *United States v. Giovannetti*, supra, 919 F.2d at 1226. But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience. *Palucki v. Sears, Roebuck & Co., supra*, 879 F.2d at 1572; *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir.1987).

*Visser v. Packer Eng'r Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).

The court has reviewed Van Bree's affidavit and concludes that it complies with Rule 56(c)(4)'s personal knowledge requirement. Although Van Bree's affidavit does not expressly state that his assertions are based on personal knowledge, the requisite personal knowledge may be inferred from the affidavit as a whole. *French v. Hickman Moving & Storage*, 400 N.E.2d 1384 (Ind. Ct. App. 1980) (construing procedural rule mirroring the requirements of Fed. R. Civ. P. 56(c)(4)). As ICA's Chief Executive Officer, Van Bree was "involved with a number of projects involving the dismantling and moving of equipment and machinery of Viasystems-Milwaukee, Inc. in Oak Creek [and that h]e had communications and discussions regarding the work performed by ICA for Viasystems with James Maloney and other employees of Viasystems." (Van Bree Aff. ¶ 1.) Van Bree also avers that as CEO he must review, approve, and sign any contracts entered by the company (Van Bree Aff. ¶ 1.) and that he did not sign the purchase order in question. (Van Bree Aff. ¶ 2.) Other averments, which I will not quote here, begin with the subject "affiant." (Van Bree Aff. ¶¶ 2-4.) Finally, Van Bree avers that he was present on the day the press was loaded onto the Landstar truck and personally observed ICA personnel load and secure the press. (Van Bree Aff. ¶ at 4.) Based on the foregoing, the court determines that Van

Bree's affidavit was based upon personal knowledge and denies the plaintiff's motion to strike to the extent it is predicated on Fed. R. Civ. P. 56(c)(4).

*b. Sham Affidavit*

The plaintiff's next attack on the Van Bree affidavit is premised on the sham affidavit rule. The plaintiff argues that Van Bree's supporting affidavit contradicts his prior sworn discovery responses, specifically his answers to the plaintiff's first set of interrogatories.

The "sham affidavit" rule prohibits litigants from creating sham issues of fact with affidavits that contradict their prior sworn testimony, *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996) (listing statements deemed by courts to be "sworn testimony" subject to the rule), such as answers to interrogatories. *Donohoe v. Consol. Operating & Prod. Corp.*, 982 F. 2d 1130, 1136 n.4 (7th Cir. 1992). "'If such contradictions were permitted . . . the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.'" *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (quoting *Bank of Illinois*, 75 F.3d at 1168-69).

In consideration of the jury's role in resolving credibility issues, courts apply the rule with great caution. *Bank of Illinois*, 75 F.3d at 1169 (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Therefore, "a definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). In other words, the proper inquiry is "whether a subsequent statement so squarely contradicts an earlier one as to create only a sham issue of fact." *Id.* at 1170.

With these principles in mind, the court will compare Van Bree's interrogatory answers against

the objected-to affidavit to determine whether a conflict between the two exists, and if so, whether the conflict warrants granting the plaintiff's motion.

The plaintiff objects to Van Bree's affidavit to the extent it "attests that ICA did not enter into a contract to both rig and transport the press . . . [and] contends that ICA had no knowledge and/or role regarding the destination of the press." (Pl's Mot. Strike Br. 3.) The plaintiff identifies which interrogatory answers it believes contradict averments made in the later affidavit; however, the plaintiff does not cite to or quote any statements from the affidavit which it believes contradict Van Bree's prior interrogatory answers, so the court is left to review the affidavit in its entirety and determine whether any of the interrogatory answers in fact conflict with statements made in the affidavit.

With regard to the existence of a contract between the plaintiff and ICA, the plaintiff claims the following interrogatory answers contradict Van Bree's later affidavit:

> INTERROGATORY NO. 2: Describe in detail all of your communications to the transportation of the Press with Plaintiff, ABC, Landstar, Padilla, and representatives of the Transmaritime Warehouse . . .
>
> ANSWER: . . . When Maloney or other Plaintiff representatives [ICA] for a quote on the transporting Press, Van Bree called Jeff Mueller at ABC Global. He asked for a quote for the transport of the Press, which was given.
>
> . . .
>
> INTERROGATORY 4
>
> ANSWER: . . . Quotes had been given by [ICA] to Plaintiff for entities other than Landstar for the transport of equipment. At some point before the Press in question was transported, Jim Maloney wanted additional quotes at lower rates. [ICA] contacted ABC Global to make transport arrangements, and relied upon it to do so. ABC Global contacted Landstar and obtained quotes for the transport of equipment. These quotes were given by Van Bree to Maloney or other representatives of Plaintiff. . . .
>
> INTERROGATORY NO. 5: Describe in detail all information that supports your claim that the Press was delivered to Plaintiff's El Paso and/or Juarez facility undamaged

. . . .

ANSWER: [ICA] was asked to make arrangements for the transport of the Press to El Paso, Texas.

The portions of Van Bree's affidavit referencing the existence of a contract between the parties are as follows:

2. There was never a written contract between either of the Plaintiffs in the above-referenced matter and JT&T or ICA for the loading and transfer of the press referenced in the Complaint and pleadings in this matter. No representative of ICA ever executed or signed the Purchase Order. Affiant did not see the Purchase Order or receive a copy of the Purchase Order attached to Viasystem's Summary Judgment Motion until after the accident which is the subject matter of this lawsuit. No such Purchase Order was ever signed by affiant or to affiant's knowledge any representative of ICA. ICA has never received any payments as stated in purported Purchase Order.

3. ICA did enter into an oral agreement with the Plaintiffs to load the press at issue on a truck for transfer to a facility to be chosen by Plaintiffs. Affiant understood that the facility was located in El Paso, Texas. ICA only agreed to find a trucking company to transport the press to El Paso. . . .

A comparison of these excerpts show there is not a conflict between Van Bree's statements. Van Bree's affidavit deals with the formation of a contract between the parties; his interrogatory answers, on the other hand, do not address the formation of a contract or the existence of a purchase order. The only thing that Van Bree's interrogatory answers state is that ICA was responsible for soliciting shipping quotes from third-party transporters on behalf of the plaintiff. ICA does not state that it agreed to transport the press or that Van Bree had knowledge of the purchase order prior to the date of the accident. Moreover, Van Bree's interrogatory answers are consistent with Van Bree's assertion that the parties entered an oral agreement to find a trucking company that would transport the press to El Paso. In short, it is my opinion that Van Bree's affidavit does not create sham issues of fact regarding the existence of a contract between the parties.

Moving to ICA's knowledge and/or role regarding the destination of the press, the plaintiff claims the following interrogatory answers contradict Van Bree's later affidavit:

INTERROGATORY NO. 2: Describe in detail all of your communications to the transportation of the Press with Plaintiff, ABC, Landstar, Padilla, and representatives of the Transmaritime Warehouse . . .

ANSWER: . . .

Maloney communicated, via e-mail, with Van Bree on September 2, 2009. The e-mail gave the address to the place where the Press was to be delivered in El Paso, Texas. . . .

. . .

On September 2, 2009 Van Bree sent an email to Mueller forwarding the address and delivery information for the Press which Van Bree received from Maloney.

A review of Van Bree's affidavit reveals the following statements relate to the press's delivery destination.

4. . . . Discussions about the exact location to where the press was to be delivered were between the Viasystem's employees and the Landstar truck driver. The bill of lading, which stated the location to where the press was to be delivered was completed and signed by Mr. Korpela and the Landstar truck driver. No representative of [ICA] was involved in any way whatsoever with the designation of the location to where the press was to be delivered, nor did any representative or employee of ICA have anything to do with the completion of the bill of lading or any agreement to truck the press except to find a trucking company acceptable to Viasystems, which ICA did.

5. Communications regarding the delivery of the press and location to where it was to be transported for later shipment were between representative of Landstar and ABC Global and Viasystems. No representative or employee of ICA had anything to do with the selection of any company for transport of the press to Mexico or any location from El Paso. No employee or representative of ICA had anything to do with designating the place where the press was to be delivered in El Paso. No representative or employee of ICA had anything to do with transfer or authorizing transfer of the press from the Landstar truck to any other truck or shipping location.

Again, these statements do not squarely contradict one another. All that Van Bree's interrogatory

answers state is that the plaintiff selected a shipping destination; that on September 2, 2009, the plaintiff provided that address to Van Bree via e-mail; and that Van Bree subsequently shared this knowledge with ABC Global. Van Bree's affidavit does not deny receiving an e-mail notifying him of the intended shipping address, nor does it state that he was unaware of the intended shipping address. For example, paragraph 4 of Van Bree's affidavit indicates that the bill of lading,[3] which is not mentioned in the cited interrogatory answers, bore the exact and final shipping destination and that ICA was not involved in completing the bill of lading. Knowledge of the intended shipping address on the eve of transport is different than designating the final shipping address on a bill of lading. Therefore, the statements do not conflict. Paragraph 5 addresses transport and delivery of the press subsequent to its delivery in El Paso, which is an entirely separate matter and thus consistent with Van Bree's interrogatory answers.[4]

To conclude, Van Bree's affidavit statements do not so squarely contradict his earlier interrogatory answers as to create only sham issues of fact. Therefore, the plaintiff's motion to strike is denied to the extent it is predicated upon the sham affidavit rule.

*c. Documentary Evidence*

The plaintiff's third and final attack on Van Bree's affidavit is based upon the standard of review set forth by the Seventh Circuit in *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)), that "[a] nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Based on this standard, the

---

[3]The bill of lading was completed on September 3, 2009.

[4]ICA notes in its brief that the Press was transferred from the truck operated by Landstar to a truck operated by Padilla Trucking, that the accident occurred while the Press was on the Padilla truck, and that no facts have been established showing how or why the Press was transferred or where it was being transferred to. (ICA Resp. Summ. J. 2.) Though unclear on its face, it appears that Paragraph 5 deals with this alleged transfer.

plaintiff asserts that "ICA failed to provide any documentary evidence supporting its claims that it did not enter into a contract to load and transport the Press to Viasystems' El Paso facility."

Rule 56(c)(1) requires parties submitting briefs on summary judgment to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that support the parties' factual position. "[A] proper summary judgment motion [may] be opposed by any of the evidentiary materials listed in 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324. Rule 56(c)(4) requires that an affidavit "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Nowhere does the rule require the affiant to cite to documentary evidence supporting his averments.

ICA has complied with Fed. R. Civ. P. 56 by citing to Van Bree's affidavit, which designates specific facts showing there is a genuine issue for trial related to the existence of a contract to load and transport the press. If the plaintiff expects ICA to produce documentation, in addition to Van Bree's affidavit, affirmatively proving the nonexistence of a contract, it asks the impossible. After all, as ICA so aptly points out in its response brief, one cannot provide documentary evidence of something that does not exist.

Because ICA has provided sufficient documentary evidence to support its opposition brief, the court will deny the plaintiff's motion to strike to the extent it is predicated on insufficient documentary evidence.

*d. Conclusion*

In conclusion, and for the foregoing reasons, the plaintiff's motion to strike will be denied.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiff moves the court to enter an order granting partial summary judgment against ICA on Count III of its complaint, determining that ICA is liable to the plaintiff for breach of contract. In support of its motion, the plaintiff argues that it has established a prima facie case of breach of contract because it has proved (1) that a contract exists between itself and ICA, (2) that ICA failed to meet its contractual obligations, and (3) that the plaintiff sustained damages. ICA opposes the plaintiff's motion on two grounds: First, the court must determine whether ICA is a motor carrier or freight forwarder under the Carmack Amendment before it can rule on the plaintiff's state law claims, and second, disputed issues of material fact preclude summary judgment. After setting forth the material facts and setting forth the proper standard of review, the court will address each argument in turn.

*a. Factual Background*

A review of the parties' proposed findings of fact and objections thereto reveals that the parties agree on little.

The plaintiff asserts that it entered a contract with ICA that required ICA to load and truck a Finnpower punch press to the plaintiff's warehouse in El Paso Texas. (PPFOF ¶ 1.) The contract that allegedly forms the basis for the plaintiff's breach of contract claim is Purchase Order M00629 ("Purchase Order"). (PPFOF ¶ 1; Complaint ¶ 9.) The Purchase Order does not bear an ICA signature nor does it indicate a specific delivery address.[5] (DPFOF ¶ 15.)

ICA denies that the Purchase Order constitutes a contract. (PPFOF ¶ 1.) Instead, ICA claims that the only contract entered into between the parties was an oral contract by which ICA agreed to find a

---

[5] The Purchase Order states "Load TPP-14 Finn Power Turret & Truck to El Paso ." (Compl. ¶ 48, Ex. B.) The plaintiff claims that the ultimate shipping address was communicated to ICA by phone. (DPFOF ¶ 15.)

trucking company acceptable to the plaintiff and to load the press onto that company's truck on the plaintiff's behalf, but did not agree to transport the Press itself (DPFOF ¶ 13.) Although not entirely clear from the parties' proposed findings, it appears that ICA selected Landstar Ranger, Inc. ("Landstar") to transport the press to the plaintiff. (DPFOF ¶ 14.) At some point, Landstar completed and provided the plaintiff with a bill of lading bearing the final delivery address. (APFOF ¶ 10.)

On September 3, 2009, the plaintiff tendered the press for transport to its El Paso, Texas facility. (PPFOF ¶ 2.) The parties disagree as to whom the press was tendered–the plaintiff claims the press was tendered to ICA and ICA claims that it was tendered to Landstar[6] (PPFOF ¶ 2.) Either way, at the time the plaintiff tendered the press, it was not damaged in any manner or form. (PPFOF ¶ 3.)

While being transported to the plaintiff, the truck carrying the press was involved in a traffic accident,[7] which caused the press to fall from the truck. (PPFOF ¶¶ 4-5.) As a result of the fall, the press sustained irreparable damages and was never delivered to the plaintiff's El Paso facility.[8] (PPFOF ¶¶ 5-6.)

*b. Standard of Review*

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome

---

[6]Although unclear from the parties' proposed findings of fact and responses thereto, it appears that the Press was loaded onto a truck operated by Landstar Ranger, Inc. in Wisconsin. (Compl. ¶ 3.) A review of the parties' briefs indicates that the parties do not dispute this fact.

[7]The parties' proposed findings of fact and responses thereto do not state who was transporting the Press at the time of the accident. ICA's brief states that the Press was on a truck operated by Padilla trucking. The plaintiff is silent on the matter.

[8]With regard to delivery, ICA contends that there is insufficient information to conclude that the press never reached the El Paso facility. (PPFOF ¶ 6.)

13

of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). However, a mere scintilla of evidence in support of the nonmovant's position is insufficient. *See Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)).

*c. Discussion*

1. Carmack Amendment & Preemption

The Carmack Amendment establishes "a nationally uniform rule of carrier liability concerning interstate shipments," *North Am. Van Lines v. Pinkerton Sec. Sys.*, 89 F.3d 452, 454 (7th Cir. 1996), and "preempts all state law claims based upon the contract of carriage, in which the harm arises out of the loss of damage of the goods." *Gordon v. United States Van Lines, Inc.*,130 F.3d 282, 284 (7th Cir. 1997). To fall within the confines of the Amendment, the party causing the loss must be a motor carrier or freight forwarder; the Amendment does not apply to brokers. *Travelers Ins. v. Panalpina Inc.*, 2010 WL 3894105, at *4 (N.D. Ill. Sept. 30, 2010) At this stage of litigation, the court does not have sufficient information to decide whether ICA is a motor carrier or freight forwarder. If ICA is deemed a motor carrier or freight forwarder under the Amendment, the plaintiff's claim would likely fall under the Carmack Amendment, meaning its breach of contract claim will be preempted. Given the possibility of preemption, even if the plaintiff could prove its breach of contract claim as a matter of law, (which it cannot for the reasons discussed next), the court cannot grant the plaintiff's motion for summary judgment at this time.

2. Disputed Material Facts

Even if the court determined that the plaintiff's state law breach of contract claim was not preempted by the Carmack Amendment, the parties dispute material issues of fact precluding summary judgment. To prevail on its motion for partial summary judgment, the plaintiff must establish that it has met its burden of proof on every element of its claim as a matter of law, and that no question of material fact remains for the trier of fact on any one of those elements. *See* Fed. R. Civ. P. 56(c). Accordingly, the plaintiff must establish that there is no issue of genuine fact: (1) that a valid contract creating

obligations existed between the parties; (2) that ICA materially breached the contract; and (3) the plaintiff sustained damages flowing naturally and probably from ICA's breach. *See Matthews v. Wisconsin Energy Corp., Inc.,* – F.3d –, 2011 WL 2138151, at * 4 (7th Cir. 2011) (applying Wisconsin contract law).[9]  To prove that a valid contract existed between the parties, the plaintiff must establish:

> an offer, acceptance and consideration. *Briggs v. Miller*, 176 Wis. 321, 325, 186 N.W. 163 (1922). Offer and acceptance exist when the parties mutually express assent, and consideration exists if the parties manifest an intent to be bound to the contract. *Gustafson v. Physicians Ins. Co.*, 223 Wis.2d 164, 173, 588 N.W.2d 363 (Ct.App.1998). Whether the parties assented and exchanged consideration are factual questions, not legal questions. *See NBZ, Inc. v. Pilarski*, 185 Wis.2d 827, 838, 520 N.W.2d 93 (Ct.App.1994); *Hoeft v. U.S. Fire Ins. Co.*, 153 Wis.2d 135, 144, 450 N.W.2d 459 (Ct.App.1989).

*Piaskoski & Assoc. v. Ricciardi*, 2004 Wis. App. 8, 275 Wis. 2d. 650, 8, 686 N.W.2d 675, 8.

It is clear from the parties' proposed findings of fact and responses thereto that material issues of fact exist as to the existence of a valid contract, thus precluding the court from disposing of this case at the summary judgment stage.  The plaintiff asserts that the Purchase Order constitutes a valid contract stating:  "for the sum of $8,580 ICA offered to load and truck the Press to 9580 Joe Rodriquez, El Paso, Texas, which was accepted by Viasystems."  ICA opposes this assertion arguing that "[t]here never was any written contract between Viasystems and ICA for the transport of the press . . . [and that t]he actual agreement for transport as reflected in the Bill of Lading was between Landstar and Viasystems."  (ICA Resp. Summ. J. 5.)  In support of its position, ICA points out that the Purchase Order was not signed by ICA and that ICA CEO, Van Bree, had no knowledge of the Purchase Order until after the accident occurred.[10]  In short, ICA denies that it offered to transport the Press to El Paso, Texas, meaning that

---

[9]The parties do not address choice of law, so the court will apply the law of the state in which it sits.

[10]ICA admits to entering an oral contract for the transport of the Press, the obligations of which ICA believes it fulfilled.  Because the plaintiff's motion for partial summary judgment does not claim that ICA breached this oral agreement, the court will not address ICA's argument as to fulfillment.

16

there could be no acceptance on the part of the plaintiff.

The key fact in this case–the existence of a valid contract obligating ICA to transport the Press to El Paso–is hotly disputed.[11] The parties' opposing factual assertions, if presented at trial, would allow a reasonable juror to return a verdict for ICA, meaning that a genuine issue of material fact exists requiring resolution by a jury.   As such, the court denies the plaintiff's motion for partial summary judgment.

## IV. CONCLUSION & ORDER

In conclusion, and for all of the foregoing reasons, the plaintiff's motion to strike and motion for partial summary judgment will be denied.

**NOW THEREFORE IT IS ORDERED** that ICA's Motion to Strike Joseph Van Bree's affidavit be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that ICA's Motion for Partial Summary Judgment be and hereby is **DENIED**;

**SO ORDERED** this 15th day of July, 2011, at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

---

[11]The parties dispute other facts that are not material at this stage in the litigation.  Those disputed facts would become material only if the trier of fact determines that a contract exists between the parties.  Therefore, the court declines to address such disputes.