# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

VIASYSTEMS TECHNOLOGIES
CORPORATION, LLC,

        Plaintiff,

        v.                               Case No. 10-C-577

LANDSTAR RANGER INC.,
JT&T INC., d/b/a INDUSTRIAL
CONSTRUCTION & ASSOCIATES,
and ABC GLOBAL, LLC,

        Defendants.

---

## DECISION AND ORDER ON VIASYSTEMS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND ABC'S MOTION FOR SUMMARY JUDGMENT

---

On June 8, 2010, the plaintiff, Viasystems Technologies Corporation, LLC, the assignee for Viasystems-Milwaukee, Inc. ("Viasystems"), filed a complaint in the Milwaukee County Circuit Court against Landstar Ranger, Inc. ("Landstar"), J.T. & T., Inc. d/b/a Industrial Construction & Associates ("ICA")[1], and ABC Global, LLC ("ABC") (collectively referred to as "the defendants"), claiming damages resulting from transportation of a Finnpower turret punch press ("the Press"). Viasystems is seeking, among other things, actual damages in the amount of $600,000.00, i.e., the actual value of a replacement press.

On July 12, 2010, ABC, joined by Landstar and ICA, removed this action to the United States District Court for the Eastern District of Wisconsin, on the grounds that Viasystems' civil action presents a federal question. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1] By stipulation dated May 14, 2012, all claims, counterclaims, and cross-claims between ICA and any other party to the litigation were dismissed.

Removal was appropriate pursuant to 28 U.S.C. §§ 1441(b) and 1446. All parties have consented to magistrate judge jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).

On December 14, 2010, the court granted in part and denied in part Landstar's motion to dismiss Count One of Viasystems' Complaint. On July 15, 2011, the court denied Viasystems' motion for partial summary judgment. Now pending before the court is Viasystems' Motion for Partial Summary Judgment and ABC's Motion for Summary Judgment, both filed on March 19, 2012, as well as Viasystems' Motion to Strike the Affidavit of Kerry Nelson, filed on June 1, 2012. The motions are now fully briefed and are ready for resolution.

## I. FACTUAL BACKGROUND

A review of the parties' submissions of their proposed findings of fact and responses thereto reveals that there is little by way of facts that the parties agree upon. That being said, this action involves the transport of Viasystems' Press from its Wisconsin warehouse to what was supposed to be its warehouse in El Paso, Texas. Sometime before September 3, 2009, Viasystems contacted ICA to transport certain presses from its facility in Oak Creek, Wisconsin to its facility located in El Paso, Texas and Ciudad Juarez, Mexico. What is not clear, however, is whether all of the involved parties knew where the Press was to be delivered, and precisely how it was to be delivered.

Before the Press incident, Viasystems decided to close its Milwaukee manufacturing facilities in Oak Creek, Wisconsin. (ABC's Proposed Findings of Fact in Support of its Summ. J. Mot. ("DPFOF") ¶ 6.) ICA, a rigging and trucking company, made arrangements for transporting the Viasystems Oak Creek equipment to other facilities. Viasystems received an order for which it needed the Press, and thus, the Press was to be transported to Viasystems' Juarez, Mexico facility to be used in filling an order to manufacture certain equipment. (DPFOF ¶¶ 10, 14.) To find a carrier to transport the Press to Mexico, Viasystems contacted ICA. (DPFOF ¶ 15.) Viasystems initially

rejected the rates of carriers that ICA presented to it and requested that ICA explore rates of other carriers. ICA then contacted ABC to arrange for the transportation of the Press. (DPFOF ¶¶ 16-17.) ABC, in turn, contacted Landstar for trucking rates. (DPFOF ¶ 18.) According to ABC, ABC then passed Landstar's proposed rates for transportation of the Press onto ICA. (DPFOF ¶ 21.) However, according to Viasystems, the quote received from ICA consisted of both rigging and transportation of the Press, and it was never provided with Landstar's rate for transportation; nor did it even know that Landstar was providing transportation services until Landstar arrived at its Oak Creek facility. (Pl.'s Resp. to DPFOF ¶ 21.)

Viasystems states that it believed that the carrier that arrived, to wit, Landstar, had previously agreed to transport the Press to its El Paso, Texas warehouse and to allow Viasystems to use the flatbed trailer to carry the Press into Mexico and deliver it to its Juarez facility. (Pl.'s Resp. to DPFOF ¶¶ 22, 48.) Viasystems argues that "ABC knew of the entire shipment requirements (Oak Creek to Viasystems' El Paso facility, use of flatbed from the El Paso facility to the Juarez facility) because ICA informed ABC of the request when ICA obtained a bid from ABC." (Pl.'s Statement of Additional Facts Requiring Denial of Summary Judgment ("Pl.'s SAF"), Dkt. No. 101, ¶ 61.) According to Viasystems, ABC failed to inform Landstar that it required the use of the flatbed on which the Press was originally loaded for further shipment from its El Paso facility to Juarez. (Pl.'s SAF ¶ 62.) This is because Viasystems believed that Landstar first learned of Viasystems' need to use the flatbed on which the Press was loaded to transfer the Press to the Juarez facility when it picked up the Press on September 3, 2009. (Pl.'s SAF ¶ 65.) Further, Viasystems claims that it paid an extra amount so as to allow it to use the original flatbed to move the Press from El Paso to Juarez. (Pl.'s SAF ¶ 69.)

ABC and Landstar are of the opinion that ICA representative, Joseph Van Bree ("Van Bree"), who was responsible for communicating Viasystems' instructions concerning the shipment of the Press, could not recall whether he communicated Viasystems' desire to use the carrier's flatbed trailer to take the Press into Mexico. (Landstar's Proposed Statement of Additional Fact ("Landstar's PSAF") ¶¶ 2-3.) Van Bree testified that he could not recall whether he had any conversations with ABC's Mueller with respect to whether there would need to be a change in trailers for the Viasystems' Press to go to Juarez, Mexico. (Landstar's PSAF ¶ 4.)

On September 3, 2009, Viasystems released the Press to Landstar for transportation and it was loaded onto a Landstar flatbed trailer at Viasystems' Oak Creek facility. (DPFOF ¶¶ 25, 29.) The Bill of Lading for transportation of the Press, which specified Landstar as the carrier, was received and signed by Landstar's driver. (DPFOF ¶¶ 26-27.) The Bill of Lading specified that the Press was to be shipped to Viasystems' El Paso, Texas warehouse. (DPFOF ¶ 28.) On September 3, 2009, Viasystems, ICA, and Landstar were present for the loading of the Press onto the trailer; ABC was not present, however. (DPFOF ¶¶ 30-32.)

On September 3, 2009, ABC representative, Jeff Mueller ("Mueller"), sent to Landstar's office in El Paso, Texas an email entitled "THIS IS WHERE THE LOAD WILL GO," which specified the address of Viasystems' El Paso warehouse. (DPFOF ¶¶ 34-35.) ABC and Landstar dispute what happened next. Landstar claims that this September 3, 2009 email from Mueller prompted a telephone call between Landstar representative, Jim Stelts ("Stelts"), and Mueller between 2:50 p.m. and 5:00 p.m. that same day. In that conversation, Landstar claims that Mueller confirmed that Viasystems planned to take the trailer with the Press across the border themselves; however, Stelts advised Mueller that they could not do that as no arrangements had been made for Viasystems to use its trailer, and Landstar would not allow for it. According to Stelts, he advised Mueller that the only

4

alternative was to retain a carrier with which Landstar had an interchange agreement to take the shipment across the border, and Mueller agreed to this alternative and authorized to arrange for transloading the Press to the trailer of a Mexican carrier so that the Press could be taken across the border. (Landstar's PSAF ¶¶ 18-19.)

Contrary to Landstar's claim that ABC authorized to have the Press transloaded onto a Mexican carrier, ABC denies that Mueller and Stelts ever had a telephone conversation on September 3, 2009 during the relevant time frame. (DPFOF ¶¶ 37-41.) ABC points out that there is no documentation evidencing Landstar's phone conversation with ABC and Landstar's phone records fail to show that any phone call was made to or received from ABC on September 3, 2009. (DPFOF ¶¶ 38-39.) ABC claims that it was never informed of Landstar's directing the Press to go to a different warehouse until after the accident happened. (DPFOF ¶ 40.)

In any event, Landstar, acting on Stelts' alleged phone call with Mueller, directed the Press to go to a different warehouse in El Paso—the Transmaritime warehouse. (DPFOF ¶ 40.) Despite the change in drop-off locations, there is no documentation showing that Landstar informed ABC or anyone else of the Press going to the Transmaritime warehouse. (DPFOF ¶ 42.) Landstar retained TyS, a Mexican carrier with which it had an interchange agreement, and arranged for delivery and transloading of the Press at the Transmaritime warehouse. (Landstar's PSAF ¶ 20.) Landstar does not recall informing ABC before the accident that it contacted TyS to transport the Press. (DPFOF ¶ 44.) Unbeknownst to Landstar (as it claims), TyS contacted another company, Padilla Transportes, to transport the Press. (DPFOF ¶ 46.) Viasystems disputes this proposition, in that it argues that certain emails appear to reveal that Landstar was aware of Padilla's involvement. (Pl.'s Resp. to DPFOF ¶ 46.)

5

After arriving at the Transmaritime warehouse in El Paso, Texas, the Press was then unloaded from the trailer and eventually transloaded onto a Padilla Transportes truck. (DPFOF ¶ 47.) The Press was transloaded to facilitate transporting the Press across the Mexican border to Viasystems' Mexican facilities. (DPFOF ¶ 48.) On September 8, 2009, en route to Viasystems' El Paso warehouse from the Transmaritime warehouse, the Press fell from the Padilla Transportes truck and was damaged. (DPFOF ¶¶ 49, 51.) After the Press was destroyed, Landstar notified ABC, not Viasystems. (Pl.'s SAF ¶ 72.)

While ABC and Landstar agree that the cause for the Press falling from the Padilla Transportes truck is unknown (the police investigation report did not indicate what caused the Press to fall), Viasystems claims that the Press fell because the driver made a sharp turn and because the Press was improperly rigged. (DPFOF ¶¶ 50, 52; Pl.'s Resp. to DPFOF ¶ 50.)

## II. SUMMARY JUDGMENT STANDARD

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). However, a mere scintilla of evidence in support of the nonmovant's position is insufficient. *See Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)).

### III. DISCUSSION

Viasystems has lodged a four-count complaint against Landstar and ABC. Viasystems alleges in Counts One and Two that the defendants violated the Carmack Amendment. In Counts Four and Five, Viasystems alleges that ABC is liable for negligent hiring and negligent entrustment.

In support of its Motion for Summary Judgment, ABC seeks dismissal of all of the claims that Viasystems asserts against it. More specifically, ABC seeks dismissal of the plaintiff's Carmack Amendment claims as well as the negligent hiring and entrustment claims. Additionally, ABC seeks dismissal of Landstar's cross claim.

7

Furthermore, Viasystems seeks partial summary judgment against Landstar on Count One of its Complaint. Viasystems seeks a determination that Landstar is liable for the destruction of the Press pursuant to the Carmack Amendment. Viasystems also moves to strike the affidavit of Kerry Nelson pursuant to Fed. R. Evid. 702.

## A. Carmack Amendment

### 1. There is a Genuine Issue of Material Fact as to Whether ABC is a Motor Carrier or a Broker

The Carmack Amendment establishes "a nationally uniform rule of carrier liability concerning interstate shipments," *North American Van Lines v. Pinkerton Security System*, 89 F.3d 452, 454 (7th Cir. 1996), and "preempts all state law claims based upon the contract of carriage, in which the harm arises out of the loss of or damage to goods," *Gordon v. United States Van Lines, Inc.*, 130 F.3d 282, 284 (7th Cir. 1997). The Carmack Amendment governs carriers, not brokers. 49 U.S.C. § 14706(a). Accordingly, if ABC qualifies as a broker, as defined by the Carmack Amendment, liability under the Carmack Amendment would not attach.

The Carmack Amendment defines "broker" as

> a person, other than a motor carrier, or an employee or agent of a motor carrier, that as a principal, or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2). The statute defines "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Further, transportation includes "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(B).

Whether a company is a broker or a motor carrier is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper. *Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003). For example, in *Hewlett-Packard Co. v. Brothers Trucking Enterprises, Inc.*, 373 F. Supp. 2d 1349 (S.D. Fla. 2005), the court found there was a genuine issue of material fact as to whether the defendant was a motor carrier or a broker when the defendant arranged to have the plaintiffs' goods transported by a reputable motor carrier. *Id.* at 1350, 1352. Because the defendant's actions were not limited to arranging transport, but it had also exerted "some measure of control" over the drivers, the court was not convinced that it acted as a broker. *Id.* at 1352. The court held similarly in *KLS Air Express, Inc. v. Cheetah Transportation LLC*, No. CIV. S-05-2593, 2007 WL 2428294 (E.D. Cal. Aug. 23, 2007), a case in which the plaintiff contacted Cheetah to arrange for transportation of a shipment of flat panel monitors, although there was no written agreement for the shipment. *Id.* at 1. Cheetah then contacted a carrier to handle the transportation, at which point Cheetah and the carrier entered into a contract whereby the carrier would pick up the monitors and transport them. *Id.* The court found that because the plaintiff offered evidence that it believed Cheetah was to be the carrier and that Cheetah was the plaintiff's sole point of contact, there were factual disputes over whether Cheetah played the role of a broker or motor carrier. *Id.* at 4.

Thus, ABC's potential liability under the Carmack Amendment hinges upon whether it acted as a broker or a carrier in relation to the relevant shipment. The underpinnnig of ABC's motion as it pertains to Viasystems' Carmack Amendment claim is that ABC acted as a broker and not as a motor carrier, and thus it is not liable under the Carmack Amendment for any damage the Press sustained during the shipment process. Viasystems argues that there are numerous facts showing that

ABC acted as a carrier, and said facts raise triable issues of fact, thus precluding summary judgment on its Carmack Amendment claim.

In this case, the court finds that there exist factual disputes over whether ABC played the role of a broker or motor carrier in the shipment of the Press. Viasystems has offered evidence that ABC is registered as a motor carrier authorized to haul private property intrastate. Contrary to what the Carmack Amendment requires, Viasystems notes that ABC was not registered with the Secretary of Transportation as a broker. *See* 49 U.S.C. § 13901. Viasystems has also presented evidence that ABC, on its website, professes to be a rigging and trucking company with fifteen trucks, five flatbed trucks, and up to 28 trailers, with capability of cross-border shipments and ability to monitor shipments, including GPS tracking of shipments. Additionally, ABC was to pay Landstar for its transportation services, and Landstar's first call regarding the shipping incident was placed to ABC, not Viasystems, thereby evidencing some measure of control ABC exerted over Landstar.

However, the proposed facts and responses thereto do not clearly indicate how much control ABC exerted over the shipment of the Press. After all, ABC denies that Landstar's Stelts called ABC's Mueller and received authorization from Mueller to transport the press to the Transmaritime Warehouse and transload the Press. Yet, a court must draw all reasonable inferences in favor of the nonmovant, and the lack of phone records and documentation does not foreclose a reasonable jury from finding Stelts credible. Thus, the amount of control ABC exerted in relation to the shipment of the Press is disputed. To add to the confusion, in its Answer to Viasystems' complaint, ABC denied that it "serves and operates as a broker." (ABC's Answer ¶ 39, ECF No. 7.) ABC cannot have it both ways. It cannot deny that it acts as a broker in its Answer and later argue that it is a broker in its

motion for summary judgment. Simply put, factual disputes preclude the granting of ABC's motion for summary judgment with respect to Viasystem's Carmack Amendment claim.[2]

    2. *Landstar is Liable to Viasystems as a Carrier under the Carmack Amendment*

Viasystems seeks partial summary judgment against Landstar on Count One of its Complaint for its liability under the Carmack Amendment because Landstar did not tender the Press in good condition. Landstar claims that there are numerous issues of material fact that prohibit a summary determination of liability in this case, including whether Viasystems and/or ABC modified the Bill of Lading, whether Landstar advised Viasystems that the Landstar trailer could not deliver the Press to Mexico, whether Landstar offered to locate a Mexican cross-border motor carrier to transport the Press, and whether Viasystems and/or ABC authorized Landstar to select a Mexican cross-border motor carrier to transport the Press.

    A motor carrier must compensate

> the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

49 U.S.C. § 14706(a)(1). A carrier is liable for goods transported "unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public

---

    [2] In a footnote, Viasystems requests as follows: "If the Court deems Count I insufficient, Viasystems requests leave to amend Count I to conform to the evidence and assert that ABC Global, LLC acted as a freight forwarder thereby making it strictly liable under the Carmack Amendment." (Pl.'s Resp. Mem. in Opposition 9 n.3.) Viasystems' request will be denied for two reasons. First, the court has not deemed Count I insufficient as it relates to ABC. Further, Viasystems has not persuaded me that allowing it to amend its complaint at this stage in the proceeding is appropriate and will not prejudice ABC—indeed, the time for discovery has since closed and dispositive motions have now been filed.

authority; (e) or the inherent vice or nature of the goods." *Miss. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964).

To establish a prima facie case under the Carmack Amendment, a shipper must demonstrate (1) delivery of the shipment to the carrier in good condition; (2) loss or damage to the shipment; and (3) the amount of damages. Once a prima facie case is established, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the expected causes relieving the carrier of liability. *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 370-71 (7th Cir. 2000).

There is no dispute that the Press was turned over to Landstar in good condition. There is also no dispute that the Press was damaged, and there is no dispute over the worth of the Press. Landstar's sole argument is predicated upon a belief that ABC was Viasystems' agent and, as its agent, it authorized Landstar to deliver the Press to the Transmaritime warehouse instead of to Viasystems' El Paso facility. Relying on an agency argument, Landstar ignores the plain language of the Carmack Amendment. Liability under the Carmack Amendment extends to *any* carrier "providing transportation or service." 49 U.S.C. § 14706(a)(1). Indeed, in *Temple Steel Corporation v. Landstar Inway, Inc.*, 211 F.3d 1029 (7th Cir. 2000), the court rejected Landstar's argument that loss in that case was caused by the drayage company that was hired to move cargo through U.S. and Mexican customs. *Id.* at 1029. Because Landstar issued a through bill of lading, Landstar was responsible for the entire movement, and it bore the "responsibility for seeking compensation from another carrier actually responsible for the loss." *Id.* at 1030.

The situation here is similar. Landstar issued a through Bill of Lading, and Viasystems is "the person entitled to recover under the . . . bill of lading." The Bill of Lading specified that Landstar was to deliver the Press to Viasystems' El Paso, Texas warehouse, and Landstar did not deliver the Press

to this location. It dropped the Press off at another location unbeknownst to Viasystems where it was to be transloaded, and then taken to Viasystems' El Paso warehouse by another carrier of Landstar's choosing. In fact, "Landstar ordered the driver not to tell Viasystems that the Press had been transloaded." (Landstar's Resp. to Pl.'s SAF ¶ 18, ECF No. 106.) Simply stated, Landstar is liable for damage caused by intermediate carriers, no matter who selected them, under § 14706(a)(1)(C). *Temple Steel Corp.*, 211 F.3d at 1029.

Relying on an agency relationship between Viasystems and ABC, Landstar argues that delivery was completed when the Press made it to the Transmaritime warehouse. However, this argument goes nowhere. First, Landstar has failed to identify any evidence that establishes an agency relationship between Viasystems and ABC. Landstar does nothing more than simply allege this to be the case. Further, even if Landstar could establish an agency relationship between Viasystems and ABC, Landstar does not cite a single federal case indicating that it could abdicate itself of liability under the Carmack Amendment because an "agent" of the shipper authorized an amendment to the Bill of Lading, save for the proposition that "[u]nder Wisconsin law, a carrier may deliver goods to one whose name does not appear on a nonnegotiable bill when he has received instructions from" either a consignor or a consignee under varying conditions. (Landstar's Br. 6.) Wisconsin law allows amendments to be made by a "consignor" or a "consignee." A "consignee" is "the person named in a bill of lading as the person to whom the goods are to be delivered," and a "consignor" is "the person named in a bill of lading as the person from whom the goods have been received for shipment." 49 U.S.C. § 80101. Here, as evidenced by the Bill of Lading, Viasystems was both the consignor and the consignee, and Landstar has not come forward with evidence demonstrating that Viasystems authorized an amendment to the Bill of Lading. To the contrary, the evidence demonstrates that Viasystems was unaware that Landstar was delivering the Press to the Transmaritime warehouse as

Case 2:10-cv-00577-WEC   Filed 12/03/12   Page 13 of 21   Document 126

opposed to its facility in El Paso. Landstar may not have learned of Viasystems' transportation requirements until the day of pick up, but that is insufficient to relieve Landstar of liability.[3]

For these reasons, Viasystems' motion for partial summary judgment against Landstar will be granted. The disputed issues identified by Landstar as the reason why Viasystems' motion should be denied do not preclude entry of partial summary judgment on Viasystems' Carmack Amendment claim against Landstar.

## B. Viasystems' State Law Claims

In addition to its Carmack Amendment claims, Viasystems asserts a number of state law claims against ABC. Although largely ignored by the parties, the Carmack Amendment bars a shipper from seeking any other remedy either state statutory or common law provides against a carrier for damages to the shipper's goods that have been transferred in interstate commerce. *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288-89 (7th Cir. 1997) (citing *Hughes*, 829 F.2d 1407, 1414-15 (7th Cir. 1987)). In other words, "claims relating to the making of the contract for carriage are so closely related to the performance of the contract, and the measure of damages for such claims so likely to be the loss or damage to the goods, that they are also preempted by the Carmack Amendment." *Id.*

At the outset, it is worth noting that Viasystems' state law claims against ABC may rise and fall on whether ABC is a broker or a carrier, which is, as previously determined, an issue to be

---

[3] Landstar submitted the affidavit of Kerry Nelson, who opined that "when the Landstar driver arrived at the Transmaritime warehouse in El Paso, and the load was successfully removed from his trailer, without incident, delivery was completed." (Nelson Aff. ¶ 2, ECF No. 109-5.) Viasystems moves to strike Nelson's affidavit because Landstar failed to prove that Nelson is qualified to be an expert, that Nelson has a proper basis for his opinion, and because Nelson's proffered testimony constitutes inadmissible legal opinion that invades the province of the court. As already established, Landstar did not comply with the Bill of Lading, regardless of whether it delivered the Press to any location in good condition. Thus, it was a carrier and, as such, liable under the Carmack Amendment. Because the opinion of Nelson has no bearing on the court's decision, Viasystems' motion to strike Nelson's affidavit will be denied as moot.

14

determined by a trier of fact. In fact, Viasystems' negligent hiring argument is predicated upon a "broker's" duty to "use reasonable care in selecting a carrier." (Pl.'s Resp. Mem. 12-15.) If ABC is determined to be a carrier, it may not be necessary to address Viasystems' state law claims it has asserted against ABC.

That being said, Viasystems alleges two negligence based claims against ABC: negligent hiring and negligent entrustment. ABC seeks summary judgment on both of these claims.

### 1. Negligent Hiring

To state a claim for negligent hiring under Wisconsin law, a plaintiff must demonstrate: (1) the existence of a duty of care on the part of the employer; (2) a breach of the duty of care; (3) a wrongful act of the employee that was the cause of the plaintiff's injury; and (4) an act or omission of the employer that was a cause of the employee's wrongful act. *Sigler v. Kobinsky*, 2008 WI App 183, ¶ 9, 314 Wis. 2d 784, 762 N.W.2d 706.

With respect to Viasystems' negligent hiring claim, ABC argues that this claim fails because it did not hire Landstar to transport the Press—rather, it "simply obtained a quote from Landstar, and then, through JT&T, passed the quote onto Viasystems." (ABC's Br. 12.) ABC also argues that Viasystems cannot show that it breached a duty of care and it cannot show causation.

The court turns first to the simple question of whether ABC hired Landstar. As stated above, ABC argues that it simply passed Landstar's quote onto JT&T, who then passed it onto Viasystems. On the other hand, Viasystems states that it never knew that Landstar was providing transportation services related to the Press until Landstar arrived at its Oak Creek facility. (Pl.'s Resp. to DPFOF ¶ 21.) It is not dispositive that Viasystems did not know Landstar was providing the transportation services until it showed up at its Oak Creek facility. However, Viasystems believed that ABC conveyed its shipping requirements to Landstar. Viasystems specifically engaged other entities to

obtain quotes for getting its Press to Juarez without changing trailers. Finally, and most telling, ABC does not dispute that it was to pay Landstar for the transportation of the Press, despite ultimate payment to be made by Viasystems. (ABC's Resp. to Pl.'s SAF ¶ 64.) When Landstar discovered that Viasystems wanted the Press to remain on its trailer, it allegedly called ABC. When the Press fell off of the Padilla trailer, Landstar called ABC. Thus, ABC's role was more than "merely passing a quote onto" Viasystems, through ICA. The court finds that ABC's role was more than what it claims to have been, although the extent to which cannot be determined at this stage because issues of material fact are disputed.

The parties agree that brokers are under a general duty to use reasonable care in the selection of carriers. Moreover, an employer does not use "ordinary care and is negligent, if the employer, without intending to do harm, does something [] or fails to do something [] with respect to the hiring . . . of an employee that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property from the employee's conduct." WI JI-Civil 1383(2012). If ABC was aware of Viasystems' shipping requirements, the failure to inform Landstar of such shipping requirements may have created a foreseeable risk that its act or failure to act may cause harm to the Press. However, the parties dispute ABC's knowledge with respect to Viasystems' shipping requirements. After reviewing the deposition testimony of Joseph Van Bree, ICA's representative who communicated with Mueller regarding the transportation of the Press, the court concludes that his testimony about precisely what he told Mueller is ambiguous. Indeed, both parties rely on different aspects of Van Bree's testimony to support their respective positions. For example, Van Bree testified that he asked Mueller for trucking prices "to transport certain pieces into El Paso and then onward to Juarez" and companies would give him their "downtime shuttle price" included in the trucking price. (Van Bree Dep. 29-33, ECF No. 89-2.) Van Bree also testified, however, that he was

"not sure if [he] even discussed" whether any of Viasystems' equipment could be shipped from Oak Creek to Juarez without changing trailers or transporters. (Van Bree Dep. 30-31, ECF No. 89-2.) Given this dispute, assuming ABC hired Landstar, a reasonable factfinder might find that ABC failed to exercise due care in the hiring of Landstar and in executing Viasystems' shipping instructions.

This brings the court to the issue of causation. There must be a causal nexus between the negligent hiring and the act of the employee. "This requires two questions with respect to causation. The first is whether the wrongful act of the employee was a cause-in-fact of the plaintiff's injury. The second question is whether the negligence of the employer was a cause-in-fact of the wrongful act of the employee." *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 262, 580 N.W.2d 233, 238-39 (1998) (citing *Louis Marsch, Inc. v. Pekin Ins. Co.*, 140 Ill. App. 3d 1079 (1985)). The test of cause-in-fact is whether the negligence was a "substantial factor" in producing the injury." *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660, 666 (1979).

Here, there is no question that the change in shipping destinations from Viasystems' Oak Creek El Paso facility to the Transmaritime warehouse implicated the need to transload the Press. Although ABC claims that the cause of the Press' destruction is unknown, Viasystems asserts that the Press fell from the trailer because it was improperly rigged. Thus, drawing all legitimate inferences in favor of the nonmovant, a factfinder could, indeed, find that the transloading of the Press led to its destruction. Again, assuming that ABC hired Landstar, had ABC informed Landstar of Viasystems' shipping requirements, the driver would not have hired TyS who in turn hired Padilla, and Landstar would not have allowed the Press to be transloaded onto another trailer. Moreover, had ABC conveyed these shipping requirements to Landstar, Landstar would not likely have had to *allegedly* seek authorization to deliver the Press to a place other than that which was specified in the Bill of

Lading. Thus, the issue of causation is better left to a factfinder, who could reasonably conclude that an act or omission on ABC's part was a cause of Landstar's wrongful act.[4]

Finally, ABC argues that public policy should preclude liability on Viasystems' negligent hiring claim. However, Wisconsin courts generally "refrain from a public policy consideration of liability until after a trial of the facts." *Sigler*, 2008 WI App 183, ¶ 12. Because factual disputes abound in the present case, the court finds it unwise to proceed with a public policy analysis.

### 2. Negligent Entrustment

Viasystems' final claim against ABC is negligent entrustment. "It is negligence to permit a third person to use a thing or engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 153, 329 N.W.2d 150 (1983) (quoting Restatement (Second), Torts 2d, § 308 (1985)).

Viasystems' claim for negligent entrustment fails for the simple reason that it has failed to demonstrate that ABC was ever in control of the Press. Even if ABC hired Landstar to transport the Press, and even if it directed Landstar to transload the Press, at no point did ABC possess the Press or was it present for its loading or transloading, which resulted in alleged improper rigging that led to the Press' destruction. Moreover, assuming ABC directed Landstar to transload the Press, thus exerting some measure of control over the Press, it appears that Landstar unilaterally decided where to transload the Press. The parties to the Bill of Lading were Viasystems and Landstar, and pursuant to the Bill of Lading, it was Landstar that was supposed to transport the Press to Viasystems' El Paso

---

[4] It is not clear who specifically unloaded the Press from the Landstar trailer and transferred it to the Padilla trailer, but, for purposes of this motion, the court has perceived Landstar to be involved in the unloading and rigging of the Press that occurred at the Transmaritime warehouse.

warehouse.  Simply stated, Viasystems has not come forward with sufficient evidence demonstrating that ABC knew or should have known that Landstar intended or was likely to conduct itself in such a way as to create an unreasonable risk of harm.  Thus, ABC's summary judgment motion with respect to Viasystems' negligent entrustment claim will be granted.

## C.  Leave to Amend

Viasystems seeks leave to amend its complaint "to conform the pleadings to the evidence." (Pl.'s Resp. 20.)  More specifically, Viasystems argues that "ABC either breached its quasi-contract with Viasystems, negligently misrepresented Landstar's bid to Viasystems, or committed fraud." (Pl.'s Resp. 20.)  Fed. R. Civ. P. 15 indicates that "[t]he court should freely give leave when justice so requires."  Discovery has long since passed, and dispositive motions have been filed.  Now that dispositive motions have been resolved, and the need for a trial is evident, the time has come to set this case for trial.  And so it shall be.  Thus, Viasystems' request for leave to amend its complaint will be denied.

## D.  Landstar's Claim for Contribution and Indemnification From ABC

Landstar's claim for contribution and indemnification from ABC is premised on a determination that ABC is found liable to Viasystems "for damage to Viasystems' punch press and/or any other damages resulting therefrom."  (Landstar's Cross Claims ¶ 9, ECF No. 50.)  No such determination has been made, and thus ABC's motion for summary judgment on Landstar's claim for contribution and indemnification will be denied.

## E.  Landstar's Breach of Contract Claim

ABC seeks judgment in its favor on Landstar's breach of contract claim against ABC because Landstar did not substantially perform on that contract.  ABC and Landstar agreed that ABC would pay Landstar $3,500 to transport the Press.  ABC argues that, because Landstar did not deliver the

19

Press to Viasystems' El Paso Warehouse, it is not entitled to the $3,500. However, according to Landstar, it satisfied its obligations under its contract with ABC because it delivered the Press to El Paso, Texas in good condition and because it received authorization to transload the Press onto another trailer so that the Press could then be delivered to Mexico. As previously determined, whether ABC authorized Landstar to deliver the Press to the Transmaritime warehouse and transload the Press is disputed. Because ABC and Landstar appear to dispute the terms of their contract, there are factual determinations that preclude the entry of summary judgment in ABC's favor. Thus, its motion with respect to Landstar's cross claim for breach of contract will be denied.

**NOW THEREFORE IT IS ORDERED** that Viasystems' motion for partial summary judgment against Landstar on its Carmack Amendment liability claim be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that Viasystems' request for leave to amend its complaint be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that ABC Global's summary judgment motion be and hereby is **GRANTED** in part and **DENIED** in part. Specifically, ABC Global's motion is granted insofar as it seeks dismissal of Viasystems' negligent entrustment claim. ABC Global's motion is denied insofar as it seeks dismissal of Viasystems' Carmack Amendment claim, Viasystems' negligent hiring claim, Landstar's breach of contract claim, and Landstar's claim for contribution and indemnification;

**IT IS FURTHER ORDERED** that Viasystems' motion to strike be and hereby is **DENIED** as moot;

**IT IS FURTHER ORDERED** that, on January 7, 2013 at 10:00 a.m., in Courtroom 242, U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, the court will conduct a conference with the parties to discuss the further processing of this action to final resolution and judgment.

**SO ORDERED** this 3rd day of December 2012 at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge